BRADLEY and wife *v.* HARTFORD STEAM-BOILER INSPECTION & INS. Co.[1]

*(Circuit Court, E. D. Pennsylvania.   December 22, 1883.)*

1. NEGLIGENCE—EXPLOSION OF BOILER—LIABILITY OF PUBLIC INSPECTORS.
   A corporation authorized by statute to insure and also to inspect steam-boilers and stationary steam-engines, and issue certificates, stating the maximum working pressure, which certificates should be accepted by the chief inspector for the city of Philadelphia, is liable for damages resulting from a negligent inspection and false certificate.

2. SAME—BURDEN OF PROOF.
   Where a steam-boiler insured and inspected by such corporation exploded, killing a child of the plaintiffs, the burden of proof was upon the plaintiffs to show (1) that the certificate accorded to the boiler a greater capacity of resistance than it would safely bear, thus authorizing its use under a dangerous degree of pressure, and (2) that this was the result of negligent inspection.

3. SAME—EVIDENCE—ADMISSIBILITY OF TESTS UPON ANOTHER BOILER SIMILAR IN CONSTRUCTION TO THE BOILER IN QUESTION.
   Experimental tests, made after the accident, upon a boiler similar in construction to the one in question, are admissible in evidence for the purpose of showing that the defendant was not negligent in the inspection of the boiler which exploded.

4. SAME—INSURERS.
   The defendants were not insurers as respects the plaintiffs, and are not, therefore, responsible for the consequences of according to the boiler a higher degree of resisting power than it would safely bear, unless their doing this resulted from negligence.

Motion for a rule for a new trial.   This was an action upon the case brought by William Bradley and wife, citizens of Pennsylvania, against The Hartford Steam Boiler Inspection & Insurance Company, a corporation of Connecticut, to recover damages for the death of plaintiffs' child, caused by the explosion of a boiler inspected and insured by the defendant.   By an act of Pennsylvania, approved May 7, 1864, (Pamphlet Laws 1864, p. 880,) the mayor of Philadelphia is directed, by and with the advice of councils, to appoint inspectors of steam-boilers, and a penalty is imposed upon any using boilers without first obtaining a certificate from the inspectors that the same was found safe and stating its maximum working pressure.   By an ordinance of Philadelphia, approved July 13, 1868, (West's Dig. 417,) the number and duties of the inspectors are set forth.   By an act of Pennsylvania, approved July 7, 1869, (Pamphlet Laws 1869, p. 1279,)

---

[1] Reported by Albert B. Guilbert, Esq., of the Philadelphia bar.

the defendant was authorized to inspect steam-boilers and issue certificates in accordance with the above recited act and ordinance.

*George H. Van Zandt* and *Furman Sheppard*, for plaintiffs.

*Frank Wolfe* and *Benjamin Harris Brewster*, for defendant.

BUTLER, J., (*charging jury.*) By virtue of the statute, to which your attention has been called, authorizing the defendants to inspect steam-boilers in pursuance of the laws of this state, the defendants' acceptance of the authority thus conferred, and undertaking to inspect Gaffney & Nolan's boilers, at the corner of Martha and Collins streets, it became their duty to make this inspection in the manner indicated by the city ordinance read to you with the care skill which the importance of the duty demands, and to grant a certificate specifying the extent of pressure the boilers would safely bear. The plaintiffs allege that the certificate granted accorded to the boiler in question, a greater power of resistance than it would safely sustain; that this was the result of carelessness in the inspection, and that in consequence a greater strain was put upon the boiler than it would bear, whereby it was exploded, and the plaintiffs' son killed. If this allegation is sustained by the evidence, the plaintiffs are entitled to your verdict; and, in such case, should be awarded a sum equal to what you may find would have been the value of the child's services to his parents, during minority, if he had lived. Is the allegation sustained by the evidence? This inquiry presents two questions, and two only. (1) Did the certificate accord to the boiler a greater capacity of resistance than it would safely bear, thus authorizing its use under a dangerous degree of pressure? And if it did, then (2) was this the result of negligent inspection? The burden of proof respecting both questions is on the plaintiffs, who must show by satisfactory evidence—*First*, the incapacity of the boiler to sustain the pressure accorded; and, *second*, that the failure to discover this incapacity, and granting the certificate to use it at so high a rate, was the result of negligence.

Considering these questions in their order, you will first inquire whether the plaintiffs have shown that the boiler would not safely bear the certified pressure. They called before you several mechanical engineers as experts, some of whom testified from investigations made after the explosion, that, in their judgment, the boiler-head would not safely sustain the pressure, and gave you their reasons for this conclusion. Some of these witnesses, as the court understood them, did not unite fully in this judgment. This, as you observe, is the opinion simply of skilled and intelligent witnesses, who had no opportunity of examining and testing the head (the only part alleged to be defective) before the explosion. On the other hand, the defendants have called before you the manufacturers of the boiler, who testify not only that the boiler was constructed of good material, and in the best manner as respects workmanship, but also that they subjected it to the hydrostatic test, and thus actually ascertained that it

would safely bear a considerably higher degree of pressure than the certificate subsequently accorded it. The defendants' agents, who inspected the boiler and granted the certificate, testify that they also subjected it to this test, and ascertained it to be capable of bearing the pressure accorded, with safety. The engineer who was first placed in charge testifies that for the several weeks he ran the engine the boiler sustained this pressure with safety. Several witnesses have testified that, with a view of ascertaining what pressure such a head would bear, a short boiler, with a head precisely like this, was manufactured after the accident, and subjected to the hydrostatic test, under the supervision of the city inspector; and that it actually bore between four and five hundred pounds to the square inch. The defendants also called experts, who, from the appearance of the boiler, expressed the judgment that it would safely bear the pressure certified. Now, gentlemen, under the evidence (and if there is anything more bearing upon this question than I have referred to, you will remember and consider it,) can you say that the boiler in question would not safely bear the pressure accorded it? If you cannot, then your verdict must be for the defendants without going further. If you find it was not capable of bearing this pressure, then you will pass to the second question, to-wit, does it appear from the evidence that the defendants were negligent in not discovering this?

The defendants were not insurers, as respects the plaintiffs, and are not, therefore, responsible for the consequences of according to the boiler a higher degree of resisting power than it would safely bear, (if they did so,) unless their doing this resulted from negligence. As before stated, it was their duty to inspect and test the boiler, as has been explained to you. If the want or insufficiency of resisting capacity could be discovered by such inspection, they should have discovered it, and failure to do so, under such circumstances, would be negligence. They were not required, nor authorized, however, to cut or chip the iron, and thus ascertain its quality, but to examine the boiler and its workmanship carefully and intelligently, and see whatever could thus be seen, and to subject it to the prescribed hydrostatic test. If they did this, and certified according to their best judgment thus formed, they are not responsible, no matter what latent defects may have existed. Does the testimony warrant a conclusion that this duty was not properly performed? Can you say that the boiler was subject to any defect discoverable by such an inspection? As before stated, the only defect alleged was in the head. This was of cast iron, flat, with the flange turned inward. If such heads as you find this to have been were in common use, and thus approved by manufacturers and the trade, the defendants cannot be held guilty of negligence in failing to condemn it on this account. That such heads were in common use at the time, the testimony on both sides would seem to put beyond doubt. That other heads, of a different type, might be safer, or that experts differ in judgment on

this subject, is unimportant.   The defendants cannot be found guilty of negligence in failing to condemn a head such as was in general use, and thus proved to be reasonably safe, or at least shown to be so esteemed.

The plaintiffs, however, contend, and have endeavored to prove, that this head, aside from its kind and material, was defective in manufacture, in that the man-hole plate, as they assert, was irregular or uneven on its surface, so that when bolted down upon the head, to make a close joint, it would strain the metal of the head, and in some other minor respects.   While two, and possibly more, of the plaintiffs' experts testify to such defects of construction, others, and probably a large number of the plaintiffs' witnesses who had an equal opportunity of examining the head, testify either that they did not find these defects, or that they attach no importance to them. On the other hand, the defendants have exhibited the man-hole plate to you, and called witnesses, who, examining it in your presence, say it does not exhibit such uneven surface, and that it cannot have been altered in this respect since the accident.

To the court the exhibition of the plate, with this testimony, seems to be a complete and conclusive answer to the plaintiffs' allegation in this regard.   You will say, however, whether it is so or not.   Other experts called by the defendants, tell you that there were no defects in the boiler-head, such as the plaintiffs ascribe to it, nor any other that a careful and competent inspector could have discovered.   The city inspector, Mr. Overn, called by the plaintiffs, as well as the defendants, tells you distinctly and emphatically, that no imperfection of any description could have been discovered in it before the explosion.   He further tells you that he, as inspector, would certainly have passed it, and accorded the pressure certified; that the broken parts, examined by him after the accident, showed plainly that the explosion resulted from faultiness of the iron alone, which faultiness no previous inspection could have revealed.   The defendants' agents, who inspected and tested the boiler, describe to you how they did it; testify that they were careful in all respects; that they could discover no defect; and that it safely bore the prescribed test.   The court sees nothing to justify the suggestion that these inspectors were wanting either in experience or intelligence.   Now, gentlemen, can you say that the want of resisting power in the boiler (if it existed) should have been discovered by inspection?

I have little more to say.   Unless the evidence satisfies you that the boiler would not bear the pressure accorded to it, and also satisfies you that this incapacity to bear such pressure could have been discovered by proper inspection, your verdict must be for the defendants. I deem it my duty to say to you, that the plaintiffs' case, in my judgment, is weak, as respects both these points; so weak as hardly to justify a verdict in their favor.   The question, however, is submitted to you, to be determined according to your judgment.   In submitting

it I caution you against all suggestions of sympathy or prejudice. They have no proper place in a court of justice.

The point submitted by the defendants, to-wit: "That under all the evidence as presented, the verdict must be for the defendants," was reserved by the court.

Verdict for defendants.

———————

The plaintiffs moved for a rule for a new trial, assigning for reasons that evidence was admitted concerning an experimental test of a different boiler than the one in question, but said to be constructed in a similar manner; that the court charged that the defendant was not guilty of negligence if the boiler in question was of a kind in common use and approved by manufacturers and the trade, and properly inspected and tested; and because the court declared that the plaintiff's case was so weak as hardly to justify a verdict in their favor.
Rule discharged.

*Vide Rose* v. *Stephens & Condit Transp. Co.* 11 FED. REP. 438.